**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | : | |
|---|---|---|
| FELIX RAMIREZ, | : | |
| Plaintiff, | : | CASE NO. 3:17-cv-1335 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ALLEN, et al., | : | |
| Defendants. | : | OCTOBER 20, 2017 |
| | : | |

_____

### INITIAL REVIEW ORDER

Plaintiff Felix Ramirez, currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 asserting claims for various federal and state constitutional rights and state tort law. The plaintiff names twenty-seven defendants: Deputy Warden Guadarrama, Lieutenants Williams and Richardson, Captains Claudio and Hall, Correctional Officers Allen, Nordby, and Dubuque, Nurses Dionne Botas and Tawanna Furtick, Nursing Supervisor Heidi Greene, Blatchelly, and fifteen John Doe defendants. All defendants are named in individual and official capacities. The complaint was received by the Court on August 7, 2017. The plaintiff's motion to proceed *in forma pauperis* was granted on August 10, 2017. (ECF No. 6.)

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the factual

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–2 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.     Allegations

During the last week of October 2015, while the plaintiff was returning from vocational education, defendant Allen performed a pat-down search on the plaintiff. During the search, she inappropriately touched his buttocks and genitals. Following this search, the plaintiff learned that defendant Allen had done this before and that some instances had been reported. Although informed of this conduct, defendant Guadarrama did not discipline defendant Allen or otherwise control her behavior.

On October 30, 2015, defendants Allen and Nordby were conducting the pat-down searches of inmates returning from vocational education. The plaintiff waited to have defendant Nordby conduct his search. Defendant Allen motioned for the plaintiff to come to her to be

searched. The plaintiff explained to defendant Nordby that he did not want defendant Allen to search him because she had previously groped his genitals and buttocks. Although she heard the plaintiff's objection, defendant Allen ordered the plaintiff to go to her to be searched, and defendant Nordby did not intervene. Defendant Allen again touched the plaintiff inappropriately. The plaintiff told defendant Allen that he was going to report the misconduct. Shortly thereafter, defendant Allen prepared a disciplinary report for the plaintiff's failure to obey direct orders.

Upon returning to his housing unit, the plaintiff asked a correctional officer to contact the lieutenant so he could make a PREA (Prison Rape Elimination Act) report against defendant Allen. The plaintiff went to the lieutenant's office where he was surrounded by 10–12 high-ranking correctional officers. The plaintiff described the incidents and asked for a state police investigation. Defendant Williams asked why the plaintiff had not reported the first incident. The plaintiff stated that he thought it might have been unintentional and feared retaliation. Defendant John Doe 1 told the plaintiff that defendant Allen was doing her job, and the plaintiff had to permit it. The plaintiff does not believe that the state police were contacted. He does not allege that he made any attempt to contact the state police himself.

That afternoon, defendant Botas interviewed the plaintiff in the medical unit. The plaintiff stated that he felt upset and violated and requested mental health assistance. Defendant Botas contacted the on-call doctor, Dr. John Doe 2, and her supervisor, defendant Greene, but did not return and did not follow-up with mental health assistance.

Defendant Williams and defendant officers Does 3, 4, 5, and 6 placed handcuffs on the plaintiff "extra tight from behind." ECF No. 1 at 3, ¶ 32. When the plaintiff complained of pain,

the officers lifted his arms causing more pain. The plaintiff was escorted to the restrictive housing unit on administrative detention status. When the plaintiff fell to the floor, defendant Williams ordered the cuffs loosened, but they remained tight and painful.

Defendant Furtick responded to the plaintiff's request for medical attention in the restrictive housing unit. The plaintiff complained of bruising and abrasions on his wrists. After examining the plaintiff's wrists, defendant Furtick refused to photograph the injuries or provide any treatment. The plaintiff refused to sign the medical incident report because defendant Furtick had written that no injuries were reported or noted as a result of the handcuff placement. Defendant Williams was present but did not correct this misstatement.

The plaintiff remained on administrative detention status in restrictive housing for nineteen days. On November 24, 2015, the plaintiff submitted a request for health services review. Defendant Greene never responded to the request.

On October 31, 2015, the plaintiff's second day in restrictive housing, he received a disciplinary report for disobeying a direct order. The plaintiff pleaded not guilty and requested defendants Allen and Nordby as witnesses. Defendant Richardson was the disciplinary hearing officer. At the disciplinary hearing, the plaintiff again requested his witnesses, but defendant Richardson denied the request. The plaintiff was found guilty of the charge. In the decision, defendant Richardson stated that the plaintiff had admitted that he refused to allow defendant Allen to search him. The plaintiff alleges this was a mischaracterization of his statement at the hearing. His sanctions included forfeiture of five days of Risk Reduction Earned Credit. The disciplinary finding was upheld on appeal.

In late April 2016, the plaintiff was assigned a new cellmate, inmate Dobson. When the

plaintiff questioned the change, defendants Does 7 and 8 told him that they were following orders and suggested that he speak to the captains and deputy warden. Inmate Dobson appeared paranoid and irritable. He randomly shouted at the plaintiff in a threatening and intimidating manner and was unclean and messy. The plaintiff heard Correctional Officer Thompson refer to inmate Dobson by the nickname "psycho." The plaintiff believed that inmate Dobson was mentally ill and had been placed in the plaintiff's cell in retaliation for his PREA complaints.

On April 30, 2016, the plaintiff wrote to defendant Blatchelly expressing fears for his safety because inmate Dobson was mentally ill. Defendant Blatchelly denied the plaintiff's request for cell transfer, stating that the facility did not accommodate request for convenience transfers. On May 7, 2016, when the cell door opened for breakfast, inmate Dobson was startled and threatened to kill the plaintiff. The plaintiff went to the control area and asked to be taken to restrictive housing for his protection. Defendant Doe 9 contacted the lieutenant, then told the plaintiff to return to his cell to wait for the lieutenant. The plaintiff begged to be placed in restrictive housing, but defendant Doe 9 ordered him to return to his cell.

The plaintiff returned to his cell. However, it was nearly time for the shift change, and no supervisor came to his cell. Later that morning, inmate Dobson struck the plaintiff in the face and head with a hard plastic coffee mug. The plaintiff got inmate Dobson in a bear hug, brought him face down to the floor, and held him to stop the attack. The plaintiff suffered a 2" laceration from his eyebrow to his nose and a lump on his head.

Defendant Dubuque ordered the plaintiff to release inmate Dobson. The plaintiff asked defendant Dubuque to open the door, stating that he was holding inmate Dobson to prevent inmate Dobson from attacking him. Lieutenant Doe 10 ordered the door opened. The plaintiff

released inmate Dobson. Without warning, Lieutenant Doe 10 sprayed the plaintiff in the face with a chemical agent. The plaintiff immediately lay on the floor, face down, with arms spread out and palms open. Three John Doe officers, Does 11, 12, and 13, entered the cell and jumped on the plaintiff's back and kicked him in the ribs. The plaintiff offered no resistance. One officer twisted the plaintiff's arm, hand and thumb behind his back. Lieutenant Doe 10 supervised the incident and did not intervene. Defendant Doe 14 filmed the incident and did not intervene. The plaintiff was decontaminated and his laceration treated in the medical unit. He then was transported to the University of Connecticut Health Center and treated for fractures to his left ribs and right thumb. The plaintiff requested, but was not provided, mental health treatment.

Defendant Dubuque issued the plaintiff a disciplinary report for fighting. The plaintiff was found guilty. He does not know what sanctions were imposed. The plaintiff believes that the finding was upheld on appeal. Defendant Claudio did not respond to the plaintiff's request for a copy of the appeal decision or his complaints regarding the placement of inmate Dobson in his cell and defendant Blatchelly's actions. After being transferred to a different housing unit, the plaintiff resubmitted his requests. Defendant Hall refused to investigate and ripped up the requests.

II.    Analysis

The plaintiff identifies the following claims: (1) Fourth and Eighth Amendment claims against defendants Allen and Guadarrama for the PREA violation and the failure to take action despite similar reports against defendant Allen; (2) failure to protect against defendant Nordby; (3) retaliation and defamation claims against defendant Allen for issuance of the disciplinary

6

report; (4) denial of due process, denial of equal protection, and racial discrimination for the actions of defendants Williams and Doe 1 regarding his reporting of the PREA violation; (5) deliberate indifference to serious mental health needs against defendants Botas, Greene and Doctor Doe 2 for failing to provide mental health treatment upon request; (6) retaliation, excessive force, assault, battery, and intentional infliction of emotional distress against defendants Williams and Does 3, 4, 5, and 6 relating to handcuffing during the plaintiff's escort to restrictive housing; (7) deliberate indifference to medical needs and intentional infliction of emotional distress against defendants Furtick and Williams for refusal to acknowledge injury from the handcuffs; (8) retaliation, denial of due process, defamation, and intentional infliction of emotional distress against defendants Richardson and Claudio based on the disciplinary report for failing to obey a direct order; (9) retaliation and deliberate indifference against defendants Does 7 and 8 for placing inmate Dobson in plaintiff's cell; (10) intentional infliction of emotional distress against "the higher ranking aforementioned defendants" for placing inmate Dobson in plaintiff's cell; (11) failure to protect against defendant Blatchelly; (12) failure to protect and intentional infliction of emotional distress against defendant Doe 9 for ordering the plaintiff back to his cell; (13) excessive force, assault, battery, and intentional infliction of emotional distress against defendants Gradarrama and Does 10, 11, 12, and 13 for the alleged assault and use of chemical agent; and (14) denial of due process and defamation against defendants Dubuque, Doe 14, Claudio, and Hall regarding to the disciplinary charge for fighting.

A.    Sections 1985(3) and 1986

Throughout the complaint, the plaintiff refers to 42 U.S.C. §§ 1985(3) and 1986). The complaint fails to allege facts to support a cognizable claim under either statute. Section 1985(3)

prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 62 (2009). Section 1985(3) may not be construed as a "general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 101–2 (1971). The plaintiff repeatedly states he is a light-skinned Latino or Hispanic male while the defendants are Caucasian. He attributes the actions of the defendants, however, to the fact that he complained about defendant Allen's actions, not his race or class. The mere fact that the plaintiff and defendants are of different races is insufficient to demonstrate the required racial or class-based discrimination. Thus, the plaintiff fails to state a plausible Section 1985 claim. *See, e.g.*, *Swanson v. City of New York,* No. 16-CV-3231(MKB), 2017 WL 3130322, at *8 (E.D.N.Y. July 21, 2017) (unsubstantiated allegations of collaboration or understanding insufficient to demonstrate meeting of the minds required for conspiracy claim (citing cases)). The section 1985(3) claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of section 1985. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for an actionable section 1986 claim is a cognizable section 1985 claim. *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). As the plaintiff has not asserted a cognizable Section 1985 claim, his Section 1986 claim fails and is dismissed pursuant to 28 U.S.C. Section 1915A(b)(1).

B.    <u>Due Process</u>

The plaintiff asserts due process claims relating to two disciplinary proceedings. He

alleges that, in each case, his sanctions included forfeiture of Risk Reduction Earned Credit. Because the plaintiff was subjected to "mixed sanctions, " *i.e.*, sanctions affecting both the duration and the conditions of his confinement, his due process claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that a claim for money damages is not cognizable under 42 U.S.C. Section 1983 if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (citation omitted). The Supreme Court later extended the favorable termination rule to Section 1983 challenges to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997).

The Second Circuit has held that *Heck's* "favorable termination" rule was not an absolute bar to consideration of due process claims arising from a disciplinary proceeding at which the plaintiff was subject to "mixed sanctions." *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). In that case, the Second Circuit held that "a prisoner subject to such mixed sanctions can proceed separately, under Section 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but . . . can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*" *Id.* (emphasis in original).

The plaintiff has not shown that the disciplinary findings he challenges have been invalidated. Thus, his due process claims are barred by *Heck* unless the plaintiff "abandon[s],

not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in [this] § 1983 suit." *Id.* Accordingly, the Court directs the plaintiff to advise the Court in writing, within twenty days of the filing date of this Ruling, whether he waives *for all time* all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (*i.e.*, the forfeiture of RREC) in order to proceed with his claims challenging the sanctions affecting the conditions of his confinement. The Court specifically advises the plaintiff that the Court will deem his failure to file this statement within the required time to constitute his refusal to waive these claims, and such failure will thus result in the dismissal of his due process claims. This direction applies to the due process claims against defendants Richardson and Claudio in claim 8, and the due process claims against defendants Dubuque, Doe 14, Claudio, and Hall in claim 14.

C.    Improper Touching

In his first claim, the plaintiff alleges that the defendant Allen violated his Fourth and Eighth Amendment rights by touching him improperly in violation of the PREA.

"While acknowledging that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell, we held more than twenty years ago that maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy [under the Fourth Amendment.]" *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). "Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to

10

intrude on the inmate's Fourth Amendment rights." *Id.* (internal quotation marks omitted). The plaintiff alleges that the pat search in this case exceeded legitimate needs and constituted improper sexual touching. This allegation is sufficient to state a plausible Fourth Amendment claim.

In addition, although the plaintiff cannot state a cognizable claim for violation of the PREA, *White v. Doe*, 2017 WL 2562845, at *5 (D. Conn. June 13, 2017), his allegations of sexual abuse are cognizable under the Eighth Amendment. *See Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (allegations of sexual abuse by correctional staff cognizable under Eighth Amendment). To determine whether sexual contact by a correctional officer violates contemporary standards of decency so as to be cognizable under the Eighth Amendment, I must determine "whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Here, the plaintiff alleges that the contact occurred during a pat frisk. However, he stated that the action was deliberate and exceeded justifiable conduct. I consider this allegation sufficient, at this stage of litigation, to state a plausible Eighth Amendment claim against defendant Allen.

D.     Failure to Discipline/Supervisory Violations

Also in his first claim, the plaintiff argues that defendant Guadarrama, the deputy warden, failed to take action against defendant Allen for her improper actions toward him, even though other inmates had reported similar misconduct. The victim of a crime has no constitutional right to have the perpetrator investigated or prosecuted. *See S. v. D.*, 410 U.S. 614, 619 (1973) ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

11

another."); *Joyce v. Hanney*, 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) (prisoner has no constitutional right to have defendants disciplined or prosecuted). As the plaintiff has no right to have defendant Allen disciplined for her actions, any claim for failure to impose discipline is dismissed. Nonetheless, construing the plaintiff's claim liberally and drawing all inferences in his favor, the allegations against Guadarrama suggest that he knew that Allen was engaging in unconstitutional conduct during inmate searches and did nothing to "control her behavior," (ECF No. 1-1 at 1) thereby allowing her to grope the plaintiffs. This is enough to state a supervisory violation of Section 1983 under *Colon. Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (personal involvement by supervisor necessary to establish liability under Section 1983 may be shown by, among others, proof that "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.").

E.        Failure to Protect / Deliberate Indifference to Safety

The plaintiff includes three claims for failure to protect him from harm or deliberate indifference to his safety. In claim 2, he contends that defendant Nordby failed to protect him from defendant Allen, and, in claims 11 and 12, he alleges that defendants Blatchelly and Doe 9 failed to protect him from inmate Dobson. He also includes in claim 9, allegations that defendants Does 7 and 8 were deliberately indifferent to his safety when they put inmate Dobson in his cell.

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to

his safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety.  *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

The plaintiff alleges that, on October 30, 2015, when defendant Allen motioned the plaintiff to go to her to be searched, he told defendant Nordby that he did not want defendant Allen to search him because she had previously groped his genitals and buttocks but defendant Nordby did not prevent defendant Allen from searching him.  The plaintiff claims that Norby "raised his . . . palms up to signify . . . 'I don't care' . . . and did not intervene" when Allen improperly groped him again. Construing this allegation liberally and drawing all inferences in the plaintiff's favor, the Court concludes that the allegations are sufficient to state a plausible claim against defendant Nordby for failure to intervene.

The plaintiff alleges that he wrote to defendant Blatchelly on April 30, 2016, stating that he feared for his safety because inmate Dobson was mentally ill and asked for a cell transfer. Defendant Blatchelly denied the request, considering it a request for a convenience transfer.  The plaintiff alleges that he renewed his request to defendant Blatchelly twice more seeking relief before the assault by Dobson but was denied.  The last request was two days before inmate Dobson assaulted the plaintiff.  The Court considers the allegations against defendant Blatchelly of repeated request for assistance sufficient at this stage of litigation to state a plausible failure to protect claim.

The plaintiff alleges that, on the day he was assaulted, inmate Dobson screamed

unprovoked threats.  The plaintiff went to defendant Doe 9 and stated that he was refusing his housing assignment because inmate Dobson threatened his life.  Defendant Doe 9 ordered the plaintiff to return to his cell to wait for a lieutenant.  No one came before the shift changed.  During the next shift, inmate Dobson assaulted the plaintiff.  Again, the plaintiff has alleged that he informed defendant Doe 9 about threats to his life but nothing was done.  This allegation also is sufficient to state a plausible failure to protect claim.  The supplemental state law claim for intentional infliction of emotional distress remains pending against defendant Doe 9.

The plaintiff alleges that defendant Does 7 and 8 put inmate Dobson in his cell.  He alleges no facts suggesting that either defendant was aware that inmate Dobson posed a threat to the plaintiff's safety.  Rather, he alleges that they were following orders in transferring the inmates.  Absent any allegations demonstrating that defendants Does 7 and 8 knew of and disregarded an excessive risk to the plaintiff's safety, the plaintiff fails to state a cognizable claim against them.  The deliberate indifference to safety claim against defendants Does 7 and 8 is dismissed.

F.     Retaliation

The plaintiff asserts four retaliation claims.  He alleges, in claim 3, that defendant Allen retaliated against him by issuing a disciplinary report for refusing a direct order; in claim 6, that defendants Williams Does 3, 4, 5, and 6 retaliated against the plaintiff by escorting him to restrictive housing in handcuffs that were too tight; in claim 8, that defendants Richardson and Claudio retaliated against him with regard to the disciplinary report for failing to obey a direct order; and, in claim 9, that defendants Does 7 and 8 retaliated against him by placing inmate Dobson in the plaintiff's cell.

To establish a claim for retaliation in contravention of the First Amendment, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Even if the plaintiff presents evidence satisfying each element, the defendants may avoid liability by showing that they "would have disciplined the plaintiff even in the absence of the protected conduct." *Id.* (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

A prisoner's oral speech is subject to limitations. Thus, it may not necessarily constitute protected activity. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995). The Second Circuit has not yet articulated a bright line rule to determine what oral speech is constitutionally protected activity to support a retaliation claim. Merely speaking with a correctional officer at any given time does not constitute protected activity. To rule otherwise would afford constitutional protection to every exchange between inmates and staff. *See Williams v. Smith*, No. 9:11-cv-0601(LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) (verbal complaint "about problems with [inmate plaintiff's] braces" not protected conduct); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (verbal confrontation between inmate and correctional officer not protected conduct).

Filing a grievance is a protected activity. That protection also has been extended to statements of intent to file a grievance. *See Shine v. Hofman*, 548 F. Supp. 2d 112, 121 (D. Vt.

2008) (treating inmate's stated intent to file grievance as protected activity). The plaintiff alleges that defendant Allen issued the disciplinary report after he told her that he intended to file a PREA complaint against her. His statement constitutes protected activity. At this time, the Court cannot determine whether defendant Allen would have issued the disciplinary report had the plaintiff not made this statement. Thus, the retaliation claim against defendant Allen will proceed at this time.

The plaintiff alleges that defendant Richardson found him guilty of the disciplinary charge based on some of his statements at the hearing and that defendant Claudio did not respond to the plaintiff's request to investigate the plaintiff's claims for excessive force and retaliation. These retaliation claims are conclusory. The plaintiff alleges no facts suggesting that defendants Richardson and Claudio acted because he filed the PREA complaint. He merely assumes this to be true. This is insufficient to support a plausible retaliation claim. The retaliation claims against defendants Richardson and Claudio are dismissed.

The plaintiff alleges that he was taken to restrictive housing in tight handcuffs in retaliation for filing the PREA complaint. This occurred right after the plaintiff was interviewed by high-ranking correctional officers regarding his PREA complaint. Temporal proximity constitutes circumstantial evidence of retaliation. *See Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (noting that temporal proximity is circumstantial evidence of retaliation but requiring further evidence to survive summary judgment). At this time, the Court will permit the retaliation claim against defendants Williams and Does 3, 4, 5, and 6 to proceed to enable the plaintiff to conduct discovery to obtain further evidence to support his claim.

Finally, the plaintiff alleges that defendants Does 7 and 8 retaliated against him by

16

putting inmate Dobson in his cell. He specifically alleges, however, that in response to his question defendants Doe 7 and Doe 8 stated that they were following orders to move the plaintiff's cellmate out and inmate Dobson in. Thus, there are no facts suggesting that defendants Doe 7 and 8 were acting in retaliation. The claim against them is dismissed.

G.    Defamation

The plaintiff asserts three defamation claims. He contends, in claim 3, that defendant Allen defamed him by issuing the allegedly false disciplinary report for disobeying a direct order; in claim 8, that defendants Richardson also defamed him in connection with the disciplinary report for disobeying a direct order; and, in claim 14, that defendants Dubuque, Doe 14, Claudio, and Hall defamed him by issuing a disciplinary report for fighting.

To establish a defamation claim under Connecticut law, the plaintiff must show that the defendants "published unprivileged false statements that harmed the plaintiff." *Cweklinsky v. Mobil Chemical Co.*, 297 F.3d 154, 159 (2d Cir. 2002) (citing *Torosynan v. Boehringer Ingelheim Pharms., Inc*., 234 Conn. 1, 27 (1995)).

Regarding the disciplinary report for disobeying a direct order, the plaintiff concedes that he initially stated that he did not want defendant Allen to search him and that when she did perform the search he refused to permit her to search his genital area. ECF No. 1-1, ¶ 50. Thus, the statements that the plaintiff disobeyed the order to permit defendant Allen search him are not false and do not support a defamation claim. Regarding the fight, the defendants observed the plaintiff struggling with inmate Dobson. Thus, he was issued a disciplinary report for fighting. The plaintiff told the defendants that he was defending himself and not the aggressor. The fact that the plaintiff may have been defending himself does not mean that he was not struggling or

fighting with inmate Dobson. Thus, the charge is not false, and the disciplinary report is not defamatory. The plaintiff's defamation claims are dismissed.

H.    Excessive Force

In claim 6, the plaintiff also contends that defendants Williams and Does 3, 4, 5, and 6 used excessive force against him when they escorted him to restrictive housing in handcuffs that were too tight. In claim 13, the plaintiff challenges the use of a chemical agent against him by defendant Doe 10 as excessive and challenged the assault by defendants Doe 11, 12 and 13. The plaintiff asserts state law claims for assault, battery, and intentional infliction of emotional distress as a result of the conduct in each claim.

The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per curiam). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

The plaintiff alleges that the tight handcuffs were used right after he was interviewed regarding his PREA complaint and in retaliation for that complaint. He alleges that he was sprayed in the face with a chemical agent and assaulted by correctional officers when he was no longer fighting or resisting any officer. These allegations are sufficient to state plausible claims that the actions were not a good faith effort to restore or maintain discipline. The excessive force claims and the supplemental state law claims will proceed at this time.

I.    Deliberate Indifference to Medical and Mental Health Needs

18

In claim 5, the plaintiff contends that defendants Botas, Greene, and Dr. Doe 2 were deliberately indifference to his need for mental health treatment by ignoring his request for treatment following the incident with defendant Allen. In claim 7, he alleges that defendants Furtick and Williams were deliberately indifferent to his injuries from the tight handcuffs by failing to acknowledge that he had been injured.

To state a claim for deliberate indifference to a serious mental health need, the plaintiff must show both that his need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The subjective component requires that the defendants be actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).

The plaintiff alleges, in claim 5, that he explained to defendant Botas that he felt afraid, humiliated, and violated after the encounters with defendant Allen and requested mental health assistance. Defendant Botas notified the on-call doctor, Dr. Doe 2, and her supervisor, defendant Greene. None of these defendants provided or arranged for, mental health treatment for the plaintiff. At this stage of litigation, the Court cannot determine whether the plaintiff suffered a serious mental health need as a result of the incidents with defendant Allen, or whether the

19

failure to provide any treatment was deliberate or negligent. Accordingly, the Eighth Amendment deliberate indifference claims against defendants Botas, Greene, and Dr. Doe 2 will proceed at this time.

The plaintiff alleges that, as a result of the tight handcuffs, he experienced bruising, abrasions, redness, and swelling. These injuries do not constitute a serious medical need because they do not produce death, degeneration, or extreme pain. *See Bryans v. Cossette*, No. 3:11-CV-1263(JCH), 2013 WL 4737310, at *10 (D. Conn. Sept. 3, 2013) (numbness in inmate's wrist leading to bleeding and abrasions does not constitute serious medical need); s*ee also Perez v. City of New York*, No. 07 Civ. 10319(RJS)(KNF), 2009 WL 1616374, at *9 (S.D.N.Y. June 8, 2009) ("Although the use of excessively tight handcuffs can constitute a violation of the Eighth Amendment … it appears highly unlikely that … pain in [the plaintiff's] wrists and pain, numbness and swelling in his foot and ankle, would be considered sufficiently serious[, in the absence of evidence the plaintiff suffered any lasting injury from the restraints,] to rise to the level of an Eighth Amendment violation" (citations omitted)).

Although the plaintiff experienced pain and discomfort from the tight handcuffs, he does not allege that he suffered any permanent injury. Thus, he fails to state a cognizable deliberate indifference claim against defendants Williams and Furtick. *See Bryans*, 2013 WL 4737310, at *10 (distinguishing *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir. 1994), where court found prisoner alleged serious medical need for too tight restraints resulting in permanent injury, because Bryans only suffered pain and numbness for three months).

The plaintiff also alleges that defendants Williams and Furtick committed the state tort of intentional infliction of emotional distress by failing to acknowledge his injury from the tight

handcuffs. To state a claim for intentional infliction of emotional distress under state law, the plaintiff must show that the defendants intended to inflict emotional distress or knew or should have known that emotional distress would likely result from their conduct, that the conduct was extreme and outrageous, that the defendants' conduct is the likely cause of the plaintiff's distress, and that the plaintiff's distress is severe. *Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 92 Conn. App. 835, 846 (2006). Conduct rising to this level must be extreme and outrageous, "exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven*, 220 Conn. 225, 267 (1991) (internal quotation marks and citation omitted).

The Court has explained that the injuries from the handcuffs do not rise to the level of a serious medical need. The actions of defendants Furtick and Williams, failing to acknowledge the temporary injury from the handcuffs, is not extreme and outrageous to support a claim for intentional infliction of emotional distress. The claim for intentional infliction of emotional distress against defendants Williams and Furtick also is dismissed.

J.      Due Process, Equal Protection and Racial Discrimination

In claim 4, the plaintiff alleges that following the submission of his PREA complaint, he was in the Lieutenant's officer surrounded by 10–12 high ranking officials. Defendant Williams summarized the two incidents the plaintiff had reported and asked if the plaintiff wanted him to contact the state police to investigate the allegations. The plaintiff said yes. Defendant Williams asked the plaintiff why he did not report the first incident. The plaintiff said that he was confused, though the touching might have been accidental, and feared retaliation. Defendant Doe 1 stated that defendant Allen was doing her job, and the plaintiff had to permit her to do her

job. The plaintiff alleges that he does not believe the state police were contacted because he was not interviewed regarding his allegations.

The plaintiff asserts claims for denial of due process, denial of equal protection, and racial discrimination based on these allegations. To support his claim for racial discrimination, the plaintiff states only that he is Hispanic and that the officers in the room were Caucasian. Conclusory allegations of racial discrimination are insufficient to support a Section 1983 claim. *McMillan v. Togus Regional Office, Dep't of Veterans Affairs*, 120 F. App'x 849, 852 (2d Cir. 2005); *see also Nguedi v. Federal Reserve Bank of New York*, No. 1:16-cv-0636-GHW, 2017 WL 2557263, at *5 n.3 (S.D.N.Y. June 12, 2017) ("Plaintiff's conclusory allegations that he was arrested '[j]ust because [he] is black,' [and] that his termination was 'rooted in racism and racial discrimination,' … are, of course, insufficient to sustain his claim without the requisite minimal factual support."); *Horne v. Buffalo Police Benevolent Ass'n*, No. 07-CV-781C, 2010 WL 2178813, at *6 (W.D.N.Y. May 28, 2010) ("A plaintiff alleging racial or gender discrimination must do more than recite conclusory allegations."). Any claim for racial discrimination is dismissed.

To support his due process claim, the plaintiff alleges that he has a liberty interest in having the state police contacted to investigate his PREA complaint. As an alleged victim of a crime, the plaintiff has no procedural or substantive due process interest in the investigation or prosecution of the perpetrator. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 468–69 (2005); *see also Nieves v. Gonzalez*, No. 05-CV-17S(SR), 2006 WL 758615, at *4 (W.D.N.Y. Mar. 2, 2006) ("[C]ourts within the Second Circuit have determined that '[t]here is … no constitutional right to an investigation by government officials.'") (citation omitted).

Research reveals no cases finding a due process right to have correctional staff contact the state police on behalf of an inmate. The plaintiff does have a First Amendment right to petition the government for redress of grievances. However, the plaintiff alleges only that the defendants did not call the state police on his behalf. He does not allege that he was prevented from calling or writing to the state police to report his allegations. Thus, the plaintiff's constitutional rights were not violated. *See Adorno v. Semple*, No. 3:16-cv-325(MPS), 2016 WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (dismissing as lacking merit claim that prisoner was not permitted to telephone state police to file criminal complaint where prisoner did not allege that he was unable to write to state police).

Finally, the plaintiff alleges that he was treated differently from other inmates asserting a PREA complaint. He states that he believes that other inmates were permitted to report PREA complaints to the state police, or had the state police contacted on their behalf, to request investigation into staff conduct.

The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). The plaintiff does not identify any inmate who

was treated differently. That he thinks one exists is insufficient to support his claim. In addition, as discussed above, the plaintiff does not allege that he was prevented from contacting the state police by phone or letter to request an investigation.

The plaintiff also could assert an equal protection claim based on a "class of one" theory. To state a valid claim, the plaintiff must allege first that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.2d 100 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). The plaintiff argues that a similarly situated person would be a Hispanic-Latino male with a criminal record. To be prima facie identical, however, that person would have had to have been subjected to fondling of his genitals through his clothing during a pat search. The plaintiff identifies no such person who was treated differently. Thus he fails to allege facts to support an equal protection claim.

K.     No Identified Defendant

Finally, in claim 10, the plaintiff asserts a state law claim for intentional infliction of emotional distress for placing inmate Dobson in his cell. The plaintiff identifies no defendant in connection with this claim. Instead he alleges: "Upon plaintiff's belief, Dobson, who was mentally ill, was not classified to be placed in the cell and therefore was, intentionally to cause him distress by the higher ranking aforementioned defendants in furtherance of the retaliating

conspiracy of the PREA complaint, filing requests and grievances, his gender, race and nationality." ECF No. 1-1 at 6, ¶ 69.

The plaintiff is familiar with the practice of utilizing John Doe defendants when he does not know the name of a particular defendant. In this case, he specifically references fourteen John Doe defendants in his claims. Thus, his failure to name any defendant to whom the action of placing inmate Dobson in his cell may be attributed is not the result of lack of knowledge regarding Doe defendants. It appears that the plaintiff assumes that, because inmate Dobson is mentally ill and subsequently assaulted him, inmate Dobson was placed in his cell specifically to achieve that result. Conclusory assumptions are insufficient to state a plausible claim. Absent any defendant against whom this claim can proceed and factual allegations against that defendant, the claim is dismissed.

III.   Conclusion

The Court enters the following orders:

(1)    The following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1): all defamation claims; the due process, equal protection and racial discrimination claim against defendants Williams and Doe 1 regarding his reporting of the PREA violation; the deliberate indifference to medical needs and intentional infliction of emotional distress claims against defendants Williams and Furtick relating to the handcuff injuries; the retaliation claim against defendants Richardson and Claudio based on the disciplinary report for disobeying a direct order; the retaliation and deliberate indifference to safety claims against defendants Does 7 and 8 relating to placement of inmate Dobson in the plaintiff's cell; and the intentional infliction of emotional distress claim against no defendant.

(2)     The case will proceed on the following claims:   the Eighth Amendment supervisory liability claim against Defendant Guadarrama; the Eighth Amendment failure to intervene claim against Nordby; the Fourth and Eighth Amendment claims against defendant Allen; the retaliation claim against defendant Allen for issuing the disciplinary report for disobeying a direct order; the deliberate indifference to mental health needs claim against defendants Botas, Greene, and Dr. Doe 2; the retaliation, excessive force, assault, battery and intentional infliction of emotional distress claims against defendants Williams and Does 3, 4, 5, and 6 relating to handcuffing during the escort to restrictive housing; the due process and intentional infliction of emotional distress claims against defendants Richardson and Claudio based on the disciplinary report for disobeying a direct order; the failure to protect claim against defendant Blatchelly; the failure to protect and intentional infliction of emotional distress claims against defendant Doe 9 for ordering the plaintiff back to his cell; the excessive force, assault, battery and intentional infliction of emotional distress claims against defendants Guadarrama and Does, 10, 11, 12, 13, and 14 for the use of a chemical agent and assault; and the denial of due process against defendants Dubuque, Claudio, Hall, and Doe 14 regarding the disciplinary report for fighting.

(3)     Before the Court orders service on the remaining defendants, the plaintiff must submit a notice stating whether he waives **for all time** all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (*i.e*., the forfeiture of RREC) in order to proceed with his claims challenging the sanctions affecting the conditions of his confinement.  The plaintiff shall file this notice, in writing using the Prisoner Efiling Program, within **twenty (20) days** of the filing date of this Ruling.  The Court specifically advises the

26

plaintiff that the Court will deem his failure to file this statement within the required time to constitute his refusal to waive these claims, and such failure will thus result in the dismissal of his due process claims. In addition, should the plaintiff elect to proceed on his due process claims, he shall provide information regarding the sanctions imposed at the disciplinary hearing for fighting or explain what conditions of confinement he suffered as a result of that guilty finding.

(4)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(4)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

        **SO ORDERED** this 20th day of October 2017 at Hartford, Connecticut.

                        /s/
                        _____
                        Michael P. Shea
                        United States District Judge