UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FELIX RAMIREZ,<br>      Plaintiff, | :<br>:<br>: |
| v. | :    CASE NO. 3:17-cv-1335 (MPS) |
| ALLEN, et al.,<br>      Defendants. | :<br>:<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Felix Ramirez, commenced this civil rights action asserting claims for violation of various federal and state constitutional rights and state tort law. Following the Court's initial review of the complaint, the following claims remained: Fourth and Eighth Amendment claims against defendant Allen for the October 30, 2015 pat down search; a supervisory liability claim against defendant Guadarrama for failing to prevent defendant Allen's acts on October 30, 2015, when he knew of past sexual misconduct allegations against her including similar conduct; an Eighth Amendment failure to protect claim against defendant Nordby for failing to protect the plaintiff from defendant Allen's improper touching on October 30, 2015; First Amendment retaliation claims against defendants Allen, Williams and several Does based on defendant Allen's issuance of an allegedly false disciplinary report when the plaintiff told her he intended to file a PREA complaint and the use of tight handcuffs under defendant Williams' supervision; Eighth Amendment excessive force claims and state tort claims against defendant Williams and several Does for tight handcuffs and painfully manipulating his arms on October 30, 2015; Eighth Amendment deliberate indifference claims against defendants Botas, Greene and doctor Doe for failure to provide or arrange for mental health treatment on

October 30, 2015; Fourteenth Amendment due process claims against defendants Richardson and Claudio relating to the November 16, 2015 disciplinary hearing; an Eighth Amendment failure to protect claim against defendant Blatchelly; an Eighth Amendment failure to protect claim and state tort claims against defendant Doe for ordering the plaintiff to return to his cell after he reported that inmate Dobson had threatened his life; Eighth Amendment excessive force claims and state tort claims against defendants Guadarrama and several Does relating to the altercation with inmate Dobson; and Fourteenth Amendment due process claims against defendants Dubuque, Claudio, Hall and a Doe relating to the disciplinary report for fighting. *See* ECF No. 7 at 26.

The remaining named defendants, Deputy Warden Guadarrama, Lieutenants Williams and Richardson, Captains Claudio and Hall, Correctional Officers Allen, Nordby, and Dubuque, Nurse Dionne Botas, CHNS Heidi Greene, and Blatchelly move for summary judgment. Instead of a response, the plaintiff filed a motion for appointment of counsel. For the reasons that follow, the plaintiff's motion is denied, the defendants' motion is granted, and the case is dismissed as to the unidentified Doe defendants. The plaintiff's state law claims are dismissed without prejudice.

I. Standard of Review

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012). "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a

genuine dispute with respect to any essential element of its opponent's case: 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Cohane v. National Collegiate Athletic Ass'n*, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II.  Facts[1]

The plaintiff, a Connecticut prisoner, has been housed at MacDougall-Walker

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and attached exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Although the defendants informed the plaintiff of this requirement, ECF No. 36-7, the plaintiff has not submitted any opposition papers. Accordingly, the defendants' facts are deemed admitted. *See* D.

Correctional Institution ("MacDougall") since October 30, 2015. ECF No. 36-6, ¶ 1. On October 30, 2015, defendant Allen conducted a pat search of the plaintiff and, allegedly, groped the plaintiff's genitals during the search. *Id.*, ¶ 2.

That same day, the plaintiff made a complaint to defendants Williams against defendant Allen. The plaintiff argued that defendant Allen violated the Prison Rape Elimination Act ("PREA") when she groped his genitals during the pat search. *Id.*, ¶ 3. Also on October 30, 2015, the plaintiff saw defendant Botas in the medical unit. He told her about the PREA complaint and complained of emotional distress. Defendant Botas told defendant Greene, the head nurse, and the on-call physician. The plaintiff contends that these three individuals failed to provide or arrange for mental health treatment. *Id.*, ¶ 4.

While he was in the medial unit on October 30, 2015, the plaintiff saw Licensed Clinical Social Worker ("LCSW") Maniram about his claim that defendant Allen had groped his genitals during the pat search. He was nervous and angry. The plaintiff told LCSW Maniram that he felt violated. LCSW Maniram determined that the plaintiff was mentally stable and coherent, and did not need further mental health treatment. As part of the standard PREA complaint procedure, LCSW Maniram ordered the plaintiff transferred to the restrictive housing unit (RHU). He was not ordered to the medical unit because he had no mental health issues, such as suicidal or homicidal ideation. *Id.*, ¶ 5.

Defendant Williams supervised the plaintiff's escort to RHU. The plaintiff alleges that the handcuffs were too tight and that the officers manipulated his arms to cause him pain. *Id.*, ¶

---

Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2."). As the complaint is verified, however, the Court considers the allegations and exhibits in reviewing the motion for summary judgment.

6.

On October 30, 2015, defendant Allen issued the plaintiff a disciplinary report for disobeying a direct order to submit to a pat search. *Id.*, ¶ 7. The disciplinary hearing was held on November 16, 2015. Defendant Richardson found the plaintiff guilty of disobeying a direct order. The plaintiff alleges that defendant Richardson did not permit him to call witnesses and intentionally misrepresented his testimony at the hearing. *Id.*, ¶ 8.

In April 2016, the plaintiff received a new cellmate, inmate Dobson. The plaintiff believed that inmate Dobson was mentally ill. *Id.*, ¶ 9. The plaintiff alleges that he repeatedly told defendant Blatchelly that he was afraid of inmate Dobson, but defendant Blatchelly refused to move the plaintiff to another cell. *Id.*, ¶ 10.

The plaintiff alleges that, on May 7, 2016, he told a correctional officer that inmate Dobson had threatened his life, but the officer ordered the plaintiff to return to his cell. Inmate Dobson assaulted the plaintiff. *Id.*, ¶11. During the assault, defendant Dubuque and several officers responded to the cell. The plaintiff was holding inmate Dobson in a bear hug on the floor. Defendant Dubuque ordered the plaintiff to release inmate Dobson. Once Dobson was released, defendant Dubuque sprayed the plaintiff with a chemical agent and the other officers assaulted him or failed to intervene to prevent the assault. *Id.*, ¶ 12.

The same day, defendant Dubuque issued the plaintiff a disciplinary report for fighting. On May 19, 2016, the plaintiff was found guilty of fighting. The hearing officer mitigated his sanctions. *Id.*, ¶ 13. The guilty finding was upheld on appeal. *Id.*, ¶ 14. The plaintiff alleges that defendant Claudio did not respond to his request for a copy of the appeal decision and defendant Hall refused to investigate his version of the events underlying the fight and ripped up

his Inmate Request describing his version of the events. *Id.*, ¶ 15.

III.  Discussion

The defendants move for summary judgment on three grounds: (1) the plaintiff has not exhausted all available administrative remedies as to any of the claims asserted in this action; (2) the plaintiff was provided appropriate mental health care on October 30, 2015; and (3) defendants Dubuque, Claudio, Hall and one Doe defendant did not participate in the May 19, 2016 disciplinary hearing.

   A.   Motion for Appointment of Counsel

As an initial matter, the Court notes that, rather than opposing the motion for summary judgment, the plaintiff filed a motion for appointment of counsel. He states that he needs assistance filing an objection and calling witnesses at a hearing on the motion. The motion is denied for several reasons.

As the Court explained in the ruling denying the plaintiff's previous motion, the Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit also has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)). In this motion, the plaintiff identifies the same three law firms he included in his first motion and repeats that Inmates' Legal Aid Program will not represent him. As the Court explained, Inmates' Legal Aid Program can provide assistance in responding to motions and would have been able to assist the

plaintiff in responding to the defendants' motion for summary judgment. However, the plaintiff does not indicate that he requested such assistance. Thus, he cannot demonstrate an inability to obtain legal assistance on his own.

In addition, the plaintiff states that he needs assistance filing an objection to the motion for summary judgment and having a hearing on it. The Court does not generally hold hearings on motions for summary judgment and no hearing was scheduled in this case. Thus, assistance with such a hearing is not needed. The defendants served a notice with their motion for summary judgment including directions for responding to the motion and warning that if he did not file opposition papers the motion would be granted.[2] ECF No. 36-7. In light of the information provided, the plaintiff's claim that he does not know how to respond to the motion is unavailing.

Furthermore, the issues in the defendants' motion are not complex. The defendants' argument with regard to most of the claims is failure to exhaust administrative remedies. Sophisticated legal analysis is not required to address whether the plaintiff timely filed administrative remedies with regard to his claims. Indeed, the plaintiff was apparently aware of the exhaustion requirement, as he refers to it in the complaint (ECF No. 1-1 at 11), and attaches some exhaustion-related papers as exhibits to his complaint. Accordingly, the motion for

---

[2] The notice itself complied with this Court's Local Rule 56(b) and, as required, attached a copy of Rule 56 of the Federal Rules. It did not, however, attach a copy of this Court's Local Rule 56, which that rule also requires. *See* L.R. 56(b). Nonetheless, I find that the Defendants' substantial compliance with the notice to self-represented litigants required by Local Rule 56(b) was adequate in this case, because the notice provided explained, in plain English, that the self-represented plaintiff had to respond by filing "his own [evidence] contradicting his opponent's if he wants to preserve factual issues for trial." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999), *see* ECF No. 36–7.

appointment of counsel is denied.

B.	Exhaustion of Administrative Remedies

The defendants first argue that the plaintiff has not exhausted his administrative remedies with regard to any of the remaining claims.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies (effective August 15, 2013) and may be found at: http://www.portal.ct.gov/doc. The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure. The exceptions listed in the directive all deal with appeals of decisions for which there are other administrative remedy procedures in place.

1. Administrative Remedies Relating to Condition of Confinement

Under Administrative Directive 9.6(6), an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If all attempts to resolve the matter informally are unsuccessful, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator must respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal to Level 2 the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner. *See id.* at 9.6(6)(G) & (I). The Level 2 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator should respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. *See id.*

The plaintiff's claims relating to the October 30, 2015 pat down search and the May 7, 2016 incident with inmate Dobson are subject to the standard administrative remedy procedures. The defendants have submitted the declaration of the Administrative Remedies Coordinator Bennett who states that he reviewed all grievances filed by the plaintiff and all grievance logs for the period from October 30, 2015, through July 10, 2018. There is no record of any non-health care grievances being filed by the petitioner between October 30, 2015, and October 7, 2016, except for a disciplinary appeal received on June 3, 2016. *See* Bennett Decl., Resp'ts' Mem. Ex. 2, ECF No. 36-2, ¶¶ 3-4 & attached exhibits.

The plaintiff has attached to his verified complaints copies of grievances he filed. The grievance relating to the October 30, 2015 incident is dated December 11, 2015. *See* Doc. No. 1,

Ex. L. The grievance relating to the May 7, 2016 incident is dated October 4, 2016. *See id.*, Ex. Y. The grievance was returned without disposition, *see id.*, Ex. Z, and resubmitted on November 1, 2016. *See id.*, Ex Z-1. Neither grievance was filed within the thirty-day period following the respective incident. Thus, the plaintiff did not properly utilize the inmate administrative remedy procedures. *See Woodford*, 548 U.S. at 90 (proper exhaustion requires compliance with agency deadlines). The defendants' motion for summary judgment is granted as to the conditions of confinement claims relating to the October 30, 2015 and May 7, 2016 incidents, *i.e.*, the Fourth and Eighth Amendment claims against defendant Allen for the October 30, 2015 pat down search, the supervisory liability claim against defendant Guadarrama for failing to prevent defendant Allen's acts on October 30, 2015, the Eighth Amendment failure to protect claim against defendant Nordby for failing to protect the plaintiff from defendant Allen's improper touching on October 30, 2015, the First Amendment retaliation claims against defendants Allen, Williams and several Does, the Eighth Amendment excessive force claims against defendant Williams and several Does for tight handcuffs and painfully manipulating his arms on October 30, 2015, the Eighth Amendment failure to protect claim against defendant Blatchelly, the Eighth Amendment failure to protect claim against defendant Doe for ordering the plaintiff to return to his cell after he reported that inmate Dobson had threatened his life, the Eighth Amendment excessive force claims against defendants Guadarrama and several Does relating to the altercation with inmate Dobson, and the claim against defendant Claudio for ignoring his request for a copy of the disciplinary appeal.

        2. <u>Health Services Review Administrative Remedies</u>

Health Services Review administrative requests are an exception to the standard

administrative remedy procedure. Administrative Directive 9.6(4)(L). Health Services Reviews are governed by Administrative Directive 8.9. There are two types of Health Services Reviews. The first seeks review of an administrative issue, i.e., a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider. The second seeks review of a diagnosis or treatment, including a decision to provide no treatment. *See id*. at 8.9(9).

Prior to filing a Health Services Review, the inmate must seek an informal resolution of his claim by discussing the claim, face to face, with the appropriate staff member or by submitting a written report to a supervisor. Staff shall respond to the inmate within fifteen days of the receipt of a written request. *See id.* at 8.9(10).

An inmate filing the first type of Health Services Review must designate the "All Other Health Care Issues" box on the form and provide a concise statement of what he believes to be wrong and how he has been affected. *Id.* at 8.9(12). The HSR Coordinator evaluates, investigates and decides each review within thirty days. Each review must be rejected, denied, compromised, upheld or withdrawn. *See id.* at 8.9(12)(A).

If the inmate is dissatisfied with the response, he may appeal the decision within ten business days. *See id.* at 8.9(12)(B). Health Services Review appeals are decided by the designated facility health services director or his designee within fifteen business days after receiving the appeal. If the issue is compliance with existing standards, this concludes the appeal process. *See id.* at 8.9(12)(C).

The plaintiff's Eighth Amendment deliberate indifference claims against defendants Botas, Greene and doctor Doe for failure to provide or arrange for mental health treatment on

October 30, 2015, remain pending. He has attached to his complaint a copy of the Health Services Review form he allegedly completed and filed on November 24, 2015. *See* Doc. No. 1, Ex. F. The form includes this claim as well as other previously dismissed claims.

The defendants have filed the declaration of Nursing Supervisor Furtick who states that she reviewed all Health Services Reviews submitted between November 24, 2015, and January 31, 2018, but found no Health Services Review for All Other Health Care Issues submitted by the plaintiff. *See* Defs.' Mem. Ex. 3, Doc. No. 36-3, ¶ 3. She states that the remedy attached to the plaintiff's complaint was not logged into the system and was not assigned a request number. *See id.*, ¶ 5.

The Court cannot determine on a motion for summary judgment which party's evidence is more credible. Thus, there remains an issue of fact whether the plaintiff exhausted his administrative remedies on this medical claim. The defendants argue that, even if the plaintiff has filed the Health Services Review, he did not appeal the denial of relief. The plaintiff argues that he never received a response. The directive provides for an appeal if the inmate is not satisfied with the response. *See* Directive 8.9(12). Unlike the standard grievance procedures, this directive makes no provision for filing an appeal if a timely response to the grievance is not received. Thus, it is not clear that the plaintiff was required to file an appeal until he received a response to his Health Services Review grievance. The defendants' motion for summary judgment is denied on the ground that the plaintiff failed to exhaust his medical claim.

        3. <u>Appeal of a Disciplinary Action</u>

An appeal of a disciplinary action also is an exception to the standard administrative remedy procedures. *See id*. at 9.6(4)(E). An inmate may appeal a guilty finding within fifteen

calendar days of the notice of decision by completing a Form 9602, Administrative Remedy Form (*i.e.* a grievance form (which has a checkbox for a disciplinary appeal)). The District Administrator reviews and responds to the appeal within fifteen business days from the receipt of the appeal. *See id.* at 9.6(10).

The plaintiff asserts Fourteenth Amendment due process claims against defendants Richardson and Claudio for alleged improprieties at the November 16, 2015 disciplinary hearing and against defendants Dubuque, Claudio, Hall, and a Doe relating to the May 2016 disciplinary report for fighting.

Administrative Remedies Coordinator Bennett states in his declaration that no appeal relating to the November 16, 2015 disciplinary hearing was filed. Defs.' Mem. Ex. 2, ECF No. 36-2. ¶ 12. The plaintiff alleges that he thinks he filed a disciplinary appeal and received a receipt. The Disciplinary Process Summary Report from the November 16, 2015 disciplinary hearing is attached to the complaint as Exhibits I & J. The next two exhibits are an Inmate Request form (Form 9601), which requests a copy of the decision on appeal, and the December 11, 2015 grievance, in which the plaintiff references actions relating to the October 30, 2015 incident and argues that the disciplinary charge was false. *See* Compl., Ex. K, L, ECF Nos. 1-10, 1-11. Thus, it appears that the plaintiff did not appeal the disciplinary finding as required. The defendants' motion for summary judgment is granted as to the due process claim arising from the November 16, 2015 disciplinary hearing.

The defendants have provided a copy of the results of the appeal of the disciplinary report for fighting. Defs.' Mem. Ex. E to Ex. 2, Doc. No. 36-2 at 202. The defendants argue that defendants Dubuque and Hall were not involved in the disciplinary proceedings itself, so

appealing the guilty finding does not exhaust the claims against them. The plaintiff is challenging the guilty finding. He contends that defendant Dubuque improperly issued the disciplinary report and defendant Hall failed to investigate his version of events. The Court liberally construes these allegations to assert a claim that the failure to investigate the plaintiff's version of events deprived him of the ability to defend against the charge.

As these claims directly relate to the guilty finding, the Court concludes that appealing the guilty finding does exhaust the plaintiff's administrative remedies with regard to these claims. Thus, the plaintiff has exhausted his administrative remedies with regard to his claims against defendants Dubuque and Hall relating to the second disciplinary report. The defendants' motion for summary judgment is denied as to the claim that the plaintiff failed to exhaust his administrative remedies with regard to the May 19, 2016 disciplinary hearing.

      C.      <u>Failure to Provide Mental Health Treatment</u>

The defendants next argue that, even if the plaintiff exhausted his administrative remedies with regard to the claim that defendants Botas, Greene and Doe failed to provide mental health treatment on October 30, 2015, his claim fails on the merits.

The Eighth Amendment forbids deliberate indifference to serious medical [or mental health] needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). To establish a claim for deliberate indifference to a serious mental health need, the plaintiff must allege facts demonstrating two elements.

The first element is objective; "the alleged deprivation of adequate medical [or mental health] care must be sufficiently serious." *Id.* (internal quotation marks omitted). Under this

15

objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical [or mental health] care," and second, "whether the inadequacy in medical [or mental health] care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). A condition is considered serious if "a reasonable doctor or patient would find [it] important and worthy of comment," the condition "significantly affects an individual's daily activities," or if it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of her actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Mere negligence conduct does not constitute deliberate indifference. *Id.* at 280. Nor does a disagreement over proper treatment or diagnosis create a constitutional claim as long as the treatment was adequate. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Chance*, 143 F.3d at 703.

The defendants have provided the declaration of LCSW Maniram stating that she saw the plaintiff in the medical unit on October 30, 2015 and determined that he had no mental health issues requiring further treatment at that time. Defs.' Mem. Ex. 1, ECF No. 35, ¶¶ 4-6 & attached medical record. Thus, contrary to the plaintiff's allegation, defendants Botas, Greene, and Doe did arrange for mental health treatment. The plaintiff provides no evidence suggesting that the diagnosis or treatment was inadequate. Thus, his claim is merely a disagreement over treatment, which is not cognizable under section 1983. The defendants' motion for summary judgment is granted as to the claim for deliberate indifference to mental health needs.

D. Due Process Claims

Finally, the plaintiff contends that defendants Dubuque and Hall deprived him of due process in connection with the May 19, 2016 disciplinary hearing. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, where liberty interests already have been severely restricted by law, a prisoner plaintiff must show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of 30 days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

At the May 16, 2016 disciplinary hearing, the plaintiff was sanctioned with time served in punitive segregation (from May 7, 2016, through May 19, 2016), and fifteen days loss of recreation. ECF No. 36-2 at 200. As the confinement in restrictive housing was well below thirty days and the plaintiff presents no evidence that the conditions in punitive segregation were unduly harsh, the plaintiff fails to demonstrate that he was subjected to an atypical and significant hardship as a result of this disciplinary finding. *See Palmer*, 364 F.3d at 65-66

17

(Second Circuit has "affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [restrictive housing]—and there was no indication that the plaintiff endured unusual [restrictive housing] conditions."). Accordingly, the plaintiff's due process claim relating to the May 2016 disciplinary hearing is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In addition, even if the plaintiff could show that he exhausted his administrative remedies with regard to the November 2015, disciplinary hearing, the sanctions he received, five days confinement in punitive segregation and fifteen days loss of recreation, ECF No. 1-9 at 1, are insufficient to constitute an atypical and significant hardship.

### E. Doe Defendants

The plaintiff included many unidentified defendants in the complaint. On November 30, 2017, the Court ordered the plaintiff to ascertain the named and current work addresses for the Doe defendants during discovery and file an amended complaint containing that information. ECF No. 9. The plaintiff did not comply with that order. Accordingly, all claims against the Doe defendants are dismissed. *See Coward v. Town and Village of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) ("Where a plaintiff 'has had ample time to identify' a John Doe defendant but gives 'no indication that he has made any effort to discovery the [defendant's] name,' however, the plaintiff 'simply cannot continue to maintain a suit against' the John Doe defendant.") (citation omitted).

## IV. Conclusion

The defendants' motion for summary judgment [**ECF No. 36**] is **GRANTED** as to all First and Eighth Amendment claims and the Fourteenth Amendment due process claims relating

to the November 2015 disciplinary hearing.  The plaintiff's due process claims relating to the May 2016 disciplinary hearings are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  All claims against the non-appearing Doe defendants are **DISMISSED** for plaintiff's failure to identify these defendants.

As all federal law claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims, it should decline to exercise supplemental jurisdiction over supplemental state law claims); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The state law claims are therefore dismissed without prejudice.

The plaintiff's motion for appointment of counsel [**ECF No. 38**] is **DENIED**.

**SO ORDERED** this 24th day of October 2018 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge